```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND


UNITED STATES OF AMERICA        *
                                *
v.                              *        Civil No. WMN-13-116
                                *        Criminal No. WMN-09-467
TERRELL ROGERS                  *
                                *
                                *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM

Petitioner Terrell Rogers filed a Motion to Vacate Sentence, ECF No. 130, pursuant to 28 U.S.C. § 2255 on February 6, 2013, supplemented by a subsequent Motion to Amend filed on August 26. ECF No. 136. Additionally, he filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense on September 3, 2013. ECF No. 137. For the reasons stated herein, the Motion to Amend will be granted, the Motion to Vacate Sentence will be denied, and the Motion to Modify will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Terrell Rogers, a.k.a. Tavon, was indicted pursuant to a superseding indictment on the following four counts: (1) possession of a firearm by a person convicted of a crime punishable by imprisonment exceeding one year (18 U.S.C. § 922(g)(1)); (2) narcotics conspiracy (21 U.S.C. § 846); (3) possession with intent to distribute cocaine base (21 U.S.C. §

841(a)(1)); and (4) conspiracy to commit witness tampering (18 U.S.C. § 1512(k)). The indictment arose out of an altercation outside of a bar between Rogers and a man named Troy Cook. Rogers, who was driving a vehicle with a friend, apparently rounded the corner adjacent to the bar at such a high speed that it startled and upset Cook's girlfriend, which led to the altercation. The fight between Rogers and Cook became physical and, at one point, Rogers ran around to the passenger's side of the car and retrieved a gun from the center console of the vehicle. After realizing that Rogers was armed, Cook ducked into the vehicle. Rogers followed suit, and, following a physical exchange inside the vehicle, Rogers pointed the gun at Cook's head. Cook pushed the gun down away from his head, and the gun fired, shooting Cook in the abdomen at close range. Rogers and his friend fled on foot. Although Cook remained hospitalized for some time, the gunshot wound was not fatal.

Rogers was later identified as the shooter by Cook's girlfriend, and the police were able to trace the vehicle left at the scene to Rogers. Rogers apparently attempted to convince the vehicle's owner, Cook's girlfriend, and a third individual to mislead police or repudiate their identification of Rogers as the shooter. The third individual, who asserted that Rogers was her drug dealer, assisted the police ultimately in apprehending Rogers by calling him to set up a drug deal. After observing

Rogers complete a transaction, the police arrested him and recovered a quantity of crack cocaine from his vehicle.

Prior to trial, Rogers sought severance of Counts One and Four from the narcotics charges in Counts Two and Three, arguing that no nexus existed among the counts and joinder would result in prejudice to Rogers. ECF No. 39. The Court severed Count Two (narcotics conspiracy), but denied Rogers's motion as to Count Three (possession with intent to distribute). ECF No. 71. The jury ultimately returned a guilty verdict as to all three remaining counts of the indictment on June 9, 2010, and Rogers was sentenced on December 2, 2010 by this Court to 292 months as to Counts One and Three, and 120 months as to Count Four, to run concurrently. In reaching that sentencing determination, the Court considered, as relevant conduct under the Sentencing Guidelines, Rogers's actions in shooting Cook, finding that Rogers used a firearm during an attempted murder. Additionally, the Court considered Rogers's extensive criminal history. Ultimately, the Court determined that 292 months, which was at the bottom of the applicable Guidelines range, was an appropriate sentence.

Rogers appealed his sentence to the Court of Appeals for the Fourth Circuit, arguing that this Court erred in applying the attempted first degree murder cross-reference as relevant conduct and failed to adequately explain the reasons for the

imposition of the sentence.  The Fourth Circuit, in an

unpublished per curiam opinion, affirmed Rogers's sentence,

holding that this Court properly calculated the applicable

Guidelines range by applying the first degree murder cross-

reference and adequately explained on the record its reasons for

imposing a sentence of 292 months.  United States v. Rogers, 457

F. App'x 268, 270-71 (4th Cir. 2011).

Rogers filed the present Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255, alleging a variety of

defects in his original proceedings before this Court and before

the Fourth Circuit Court of Appeals, stemming from alleged

ineffective assistance of counsel.[1]  Specifically, Rogers asserts

the following defects: (1) the District Court erred in denying

his request to sever the gun charge from the drug charge; (2)

the District Court committed error in applying the base offense

level for attempted murder through cross-reference; (3) trial

counsel was ineffective in permitting a stipulation detailing

the name and nature of a prior conviction; (4) counsel was

ineffective in waiving Rogers's right to confront a witness

---

[1] The Mandate of the Fourth Circuit Court of Appeals issued on
December 29, 2011.  Rogers did not file the instant motion until
February 6, 2013, more than a year after final judgment.  See 28
U.S.C. § 2255(f) (one-year statute of limitations for habeas
petitions).  Because the Government did not assert in its
Opposition that Rogers's petition is barred by the statute of
limitations, the Court presumes that Rogers's claims were
asserted timely.

4

against him without his consent; (5) trial counsel was
ineffective in failing to object to hearsay evidence regarding
the interstate commerce element of § 922(g); (6) trial counsel
was ineffective when he failed to advise Rogers that the
decision of whether to testify belonged to Rogers, and not
counsel; and (7) insufficient evidence exists to support
Rogers's conviction under § 922(g).  For those issues not
relating to the ineffective assistance of trial counsel, Rogers
appears to also allege ineffective assistance of appellate
counsel for failure to raise the issues before the Fourth
Circuit Court of Appeals.  Rogers also filed an amendment to his
§ 2255 motion, asserting that his sentence violated his Sixth
Amendment right to a trial by jury under the Supreme Court's
decision <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and its
progeny.

## II.  <u>LEGAL STANDARD</u>

To state a claim for relief under 28 U.S.C. § 2255, a
federal defendant must prove one of the following: (1) his or
her sentence was "imposed in violation of the Constitution of
the United States;" (2) "the court was without jurisdiction to
impose such a sentence;" or (3) "the sentence was in excess of
the maximum authorized by law, or is otherwise subject to
collateral attack."  § 2255(a).  In a § 2255 motion, the
defendant bears the burden of proving grounds for a collateral

attack by a preponderance of the evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  Generally, proceedings filed by pro se defendants are construed more liberally than those drafted by attorneys.  Haines v. Kerner, 404 U.S. 519, 596 (1972).

## III. **DISCUSSION**

Rogers asserts a variety of claims challenging both his conviction and sentence.  As to each claim, he contends that either his trial counsel was ineffective, or that his appellate counsel was ineffective for failing to raise, on direct appeal, what he views as serious errors in the trial proceedings.  The Sixth Amendment right to counsel includes the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail on a claim for ineffective assistance of counsel, whether regarding trial or appellate counsel, see Smith v. Murray, 477  U.S. 527 (1986); Smith v. Robbins, 528 U.S. 259 (2000), a petitioner ordinarily must show, first, that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88. The court, in considering a habeas petition on these grounds, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Second, if counsel's performance is deemed deficient, the petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome,' . . . and '[t]he likelihood of a different result must be substantial, not just conceivable.'" Richardson v. Branker, 668 F.3d 128, 139-40 (4th Cir. 2012) (quoting Strickland, 466 U.S. at 694; Harrington v. Richter, 131 S.Ct. 624, 792 (2011)) (emphasis in original). In evaluating a claim of ineffective assistance of counsel, the Court need not necessarily address first whether counsel's performance was deficient. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

## A. Challenges to Conviction

### a. Trial Court's Failure to Sever Indictment

Rogers first argues that the District Court erred in declining to sever the drug-related counts from the gun charge, and that appellate counsel was ineffective for failing to raise the argument on appeal. Because a finding of ineffective assistance of counsel requires that, but for counsel's alleged errors, the result would have been different, the Court will evaluate first the merits of Rogers's argument regarding the prejudice caused by the alleged error.

Under Federal Rule of Criminal Procedure 8(a), "[t]he indictment or information may charge a defendant in separate counts with two or more offenses if the offenses charged are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Under Rule 8(a), "very broad joinder" is permitted "because of the efficiency in trying the defendant on related counts in the same trial[;]" thus, joinder is the "rule rather than the exception." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005); United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). Where the joinder of offenses "appears to prejudice a defendant or the government, [however,] the court may order separate trials of counts. . . ." Fed. R. Crim. P. 14(a).

A defendant seeking separate trials under Rule 14 "has the burden of demonstrating a strong showing of prejudice." United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984). "Furthermore, whether joinder is so prejudicial as to warrant severance is a matter committed to the discretion of the district court." United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008). Thus, in order for Rogers's appellate counsel to prevail on his severance argument, had she raised it, she would have needed to demonstrate that the district court abused its discretion in declining to sever the drug charge, and that the

resulting error was prejudicial to the defendant.  See generally
United States v. Lane, 474 U.S. 438, 445-446 (1986) ("[A]n error
involving misjoinder 'affects substantial rights' and requires
reversal only if the misjoinder results in actual prejudice
because it 'had substantial and injurious effect or influence in
determining the jury's verdict.'" (quoting Kotteakos v. United
States, 328 U.S. 750, 776 (1946))).

Rogers argues that, "because the gun and drug charges were
for the most part unrelated to each other and simply constitute
two separate events that occurred on different dates and were
not part of the same transaction or plan," much of the evidence
presented at trial was not relevant to the firearm possession
charge and it was therefore improperly joined.  ECF No. 130 at
17.  The Government, by contrast, asserts that the trial court
properly denied severance of Counts One, Three, and Four.
Specifically, it contends that, because the facts underlying the
counts were intertwined, the jury necessarily would have heard
information concerning witness tampering and drug possession in
conjunction with the firearm possession charge.  Thus, severance
would have resulted in "needless duplication of judicial effort
in light of the legal, factual, and logistical relationship
between the charges."  See Mir, 525 F.3d at 357.

Rogers cannot demonstrate that the District Court[2] abused its discretion in declining to sever the charges, nor that the result of the appellate proceeding would have been different had severance been raised in the initial appeal. As the Government notes, the facts concerning the three charges were intertwined – the drugs were found when Rogers was arrested for the altercation with Cook, the witness tampering charges stemmed from the altercation with Cook, and the witness tampering investigation ultimately led to the arrest and drug discovery. An attempt to prosecute any of those three claims would have necessarily included the factual background underlying one or both of the other charges. Thus, the purposes of Rule 8(a) were met by joining the charges. Moreover, the trial judge's decision to sever one of the original counts from the superseding indictment suggests that he gave careful consideration to the prejudice that might result to the defendant if the charges were tried in tandem. Rogers has not, therefore, demonstrated that the trial court abused its discretion in declining to sever the charges.

### b. **Admission of 404(b) Stipulation**

Rogers next argues that he was unduly prejudiced by trial counsel's stipulation as to the name, nature, and circumstances

---

[2] Rogers's case was initially assigned to Judge Bennett, who handled all pre-trial matters. The case was reassigned to this Court for trial.

of a prior conviction.  Section 922(g)(1) of the Criminal Code
prohibits, in relevant part, possession of a firearm by "any
person who has been convicted in any court of, a crime
punishable by imprisonment for a term exceeding one year."  18
U.S.C § 922(g)(1).  Rogers did not dispute at trial that he fell
within the category of persons prohibited from possessing a
firearm.  With respect to the alleged violation of § 922(g),
Rogers asserts that he offered to stipulate that "(1) [h]e had
been convicted of a crime punishable by a term of imprisonment
exceeding one year, and (2) [t]he government had proven one of
the essential elements of the 922(g)(1) offense."  ECF No. 130
at 27.  Instead, the trial judge ruled that the Government's
proffered stipulation, which contained evidence admitted under
Fed. R. Evid. 404(b), was admissible.  The stipulation read:

> [I]t is agreed and stipulated between the parties
> that, if called to testify, Baltimore County Police
> Department Detective Gerald DeAngelo would state that
> on March 15th, 2001, while working in an undercover
> capacity, he paged the defendant, Terrell Rogers.  The
> defendant called him back and they made arrangements
> to meet by Westview Mall for the purpose of exchanging
> crack cocaine (cocaine base) for $50.  At the
> appointed time and place, the defendant approached
> Detective D'Angelo [sic] on foot and handed him a
> plastic baggie with five glassine baggies inside.  The
> substance inside field tested positive for cocaine.
> The defendant was arrested and charged with
> distribution, possession with intent to distribute,
> and possession of a controlled dangerous substance.
> The defendant pled guilty to distribution of a
> controlled dangerous substance on or about September
> 17th, 2001.

ECF No. 121 at 103-04.  Trial counsel noted on the record his objection to the admission of the 404(b) evidence.  Id. at 104. Appellate counsel did not raise the issue on appeal.  The Government contends that, after the trial judge ruled that the evidence was admissible under FRE 404(b), the decision to stipulate by defense counsel "was part of a trial strategy to mitigate the impact of witness testimony."[3]  ECF No. 132 at 16.

Federal Rule of Evidence 404(b) provides that generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence may be admissible for another purpose, however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Even if one of those exceptions applies, if the probative value of the extrinsic act "is outweighed by the risk that its admission will create a substantial danger of undue prejudice to the accused," the evidence must be excluded.  United States v. Woods, 484 F.2d 127, 134 (4th Cir. 1973); Fed. R. Evid. 403.  Appellate courts generally review a trial judge's decision to admit testimony

---

[3] Because pro se rulings are liberally construed, the Court interprets Mr. Rogers's argument as an objection also to the admission of the 404(b) evidence, rather than merely to the content of the stipulation.

under Rule 404(b) for an abuse of discretion.  See United States

v. Queen, 132 F.3d 991, 995 (4th Cir. 1997).

It is clear from the record that trial counsel adequately

objected to the admission of the 404(b) evidence, and any

resulting strategic decision to mitigate the impact of witness

testimony cannot be seen as ineffective assistance of counsel.

To the extent that Rogers argues also that appellate counsel was

ineffective for failing to raise the issue, Rogers must

demonstrate that, but for appellate counsel's deficient

performance, the result would have been different.  Even

assuming that Rogers's appellate counsel was deficient for

failing to raise the argument, Rogers has not established that

the trial court abused its discretion.  To the contrary, the

Government offered the 404(b) evidence to establish Rogers's

intent to distribute narcotics, as opposed to some other

purpose.  Additionally, the Court gave a limiting instruction to

the jury regarding the 404(b) evidence.[4]  Thus, because Rogers

---

[4] The limiting instruction read:

> I have allowed some evidence to be introduced
> regarding Mr. Rogers' participation in criminal
> conduct in the past.  Specifically, you have heard by
> way of a stipulation that Mr. Rogers was convicted of
> possession with intent to distribute a controlled
> dangerous substance in 2001.
>
> This evidence is not to be considered as proof
> that the defendant committed the crime charged in
> Count 2 of possessing with intent to distribute a
> controlled substance or any of the crimes charged.
> Mr. Rogers is on trial only for the specified charges

cannot establish that the trial court abused its discretion in admitting the 404(b) stipulation, he also cannot establish that appellate counsel's failure to raise the issue was prejudicial.

### c. **Trial Counsel's Waiver of Right to Confrontation**

Rogers also contends that defense counsel's decision to stipulate as to Officer DeAngelo's statements was a violation of his Sixth Amendment right to confront the witnesses against him. See generally Crawford v. Washington, 541 U.S. 36, 42 (2004). Although Rogers frames counsel's decision to stipulate as "a courtesy to the Government," ECF No. 130 at 30, as explained supra, it is better viewed as a strategic decision. Considering the potential impact that the Detective's in-person testimony may have had, defense counsel's performance "was reasonable considering all of the circumstances." Strickland, 466 U.S. at 688. Therefore, defense counsel was not ineffective on this ground.

---

set out in the indictment. However, if you determine that the government has proved beyond a reasonable doubt that Mr. Rogers possessed a controlled substance on or about August 30, 2008, as charged in Count 2, then you may, but you need not, draw an inference from the similar act in the past, that he acted knowingly and with an intention to distribute the controlled substance.

You are cautioned that you are not to use this evidence of past criminal conduct to conclude that because defendant committed the earlier act, he must also have committed the act alleged in the indictment.
ECF No. 86 at 16.

### d. **Trial Counsel's Failure to Object to Hearsay Testimony**

Rogers also contends that his trial counsel was ineffective for failing to object to alleged hearsay testimony by a government witness. Section 922(g)(1) requires that the government prove, beyond a reasonable doubt, that the defendant possessed a "firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). In order to establish the "interstate nexus" element, the government need only demonstrate that Rogers "possessed the [firearm] in a state other than the one in which it was manufactured." United States v. Corey, 207 F.3d 84, 88 (1st Cir. 2000); see also United States v. Crump, 120 F.3d 462, 466 n.2 (4th Cir. 1997).

At trial, the Government called Agent Mahanand, a special agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF), to establish that the gun possessed by Rogers was a firearm manufactured outside of Maryland, and that, therefore, had traveled in interstate commerce. See 18 U.S.C. § 922(g). Agent Mahanand testified that he had been employed with ATF for 21 years and had extensive training in identifying firearm manufacturers. ECF No. 132-4 at 3-5. He stated that, as part of his official responsibilities, he "examin[ed] firearms" and "determin[ed] the interstate nexus" of those firearms. He

testified that he had performed an interstate nexus assessment approximately 250 times.  Id. at 3-6.

Rogers contends that, in testifying as to the firearm's location of manufacture, Agent Mahanand "relied entirely on out-of-court statements as proof that the fire arm affected the [interstate] nexus of 922(g)."  ECF No. 135 at 22.  Agent Mahanand testified that, although his process in performing the interstate nexus assessment begins with the receipt of an operability report prepared by the local law enforcement agency, he then relies on the firearm's serial number to research information in the ATF databases, books, and a trace report.  He further testified that, although he did not have the firearm with him at the time he performed his research, the serial number he relied on matched the serial number on the firearm admitted into evidence at trial.  Moreover, when asked whether he was "aware of any handguns that are manufactured entirely of components that are produced and assembled here in the State of Maryland," he responded "[n]o[.]"  ECF No. 132-4 at 10.  The Court determines that, because Agent Mahanand relied on his own expertise, in addition to his own research, in determining that the gun affected interstate commerce, the admission of his testimony did not violate the hearsay rules.  See, e.g., Corey, 207 F.3d at 88-91.

   **e. Trial Counsel's Failure to Advise of Right to Testify**

Rogers additionally argues that his trial counsel was ineffective because counsel failed to inform him that the decision regarding whether to testify belonged solely to him. Rogers asserts that the ultimate decision in a criminal case regarding whether the defendant will testify in his or her own defense belongs to the defendant, and not to defense counsel. See Sexton v. French, 163 F.3d 874, 881-82 (4th Cir. 1998). Defense counsel ordinarily bears "primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not." Id. at 882. "[T]he burden shouldered by trial counsel [in informing the defendant of this right] is a component of effective assistance of counsel." Id.

The factual record flatly contradicts Rogers's assertion that he was not advised of his right to testify in his own defense and that the decision rested with him, and not defense counsel. The following colloquy occurred on the record before the Court:

> [GOVERNMENT]: Judge, can I have one minute to consult? Judge, I confess a failure of recollection here. But something rings in my mind that there's typically an on-the-record advisement of the defendant's right to testify and make sure that a decision on his part not to testify is knowing and intelligently, voluntarily made. Maybe I'm confabulating here something.
>
> THE COURT: I think you're correct that that's usually what happens. I don't think there's any legal requirement –

[GOVERNMENT]: Okay, Judge.

THE COURT: -- that it happen.  But out of an abundance of caution, [defense counsel], I assume that Mr. Rogers has been advised by you that he has the right to testify.

[DEFENSE COUNSEL]: Yes, Your Honor.  I have advised him he has a constitutional right to testify and, additionally, how he cannot be forced to testify unless he's so chosen.  We've discussed that right before we rested, well before we rested.

THE COURT: Mr. Rogers has decided that he would prefer that he not testify; correct?

[DEFENSE COUNSEL]: That's correct, Your Honor.

THE COURT: That's correct, Mr. Rogers?

[MR. ROGERS]: Yes, sir.  Yes, sir.

GOVERNMENT: Thank you, Your Honor.

ECF No. 132-5 at 2.  Because the record reflects that defense counsel advised Rogers of his personal right to testify, and that Rogers knowingly and intelligently waived that right, Rogers cannot establish that defense counsel's performance fell below "prevailing professional norms."  Strickland, 466 U.S. at 688.

### f. Insufficient Evidence to Support § 922(g)(1) Conviction

Rogers contends that the Government produced insufficient evidence to support his conviction for possession of a firearm, and that his appellate counsel was ineffective for failing to pursue this claim on appeal.  Specifically, Rogers argues that

the Government failed to establish that the firearm was in his possession, or that he owned or was ever in the vicinity of the property on which it was found.

The handgun introduced into evidence at trial was found in the bushes near a house on the same street on which the original altercation took place between Rogers and Cook. Two spent cartridge casings, which were found in the car in which Cook was shot, were matched to those test-fired from the gun. The gun was registered to a woman named Phyllis Williams, who denied purchasing the gun for Rogers, although she acknowledged meeting him on several prior occasions. Although no DNA evidence was collected from the gun, DNA and fingerprint analysis resulting from the investigation of the vehicle involved revealed matches to the defendant. Rogers contends that such circumstantial evidence is insufficient to sustain his conviction.

To establish constructive possession, "the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992) (quoting United States v. Ferg, 504 F.2d 914, 916-17 (5th Cir. 1974)). Here, eyewitness testimony placed Rogers in the car holding and shooting a firearm, and spent firearm casings from the vehicle matched those of the handgun recovered. This was sufficient evidence from which the jury

could find, beyond a reasonable doubt, that Rogers possessed the
handgun at the time of the altercation.

**B. <u>Challenges to Sentence</u>**

Rogers was ultimately sentenced by this Court to 292 months
on Counts 1 and 3, and 10 years on Count 4, to be served
concurrently. Rogers now challenges that sentence on two
primary grounds – first, that the Court erred in calculating the
guidelines range for his sentence by cross-referencing to an
offense that is not subject to grouping under the Sentencing
Guidelines, and second, that the Court violated his Sixth
Amendment right to a trial by jury by sentencing him in excess
of the statutory maximum on the basis of judicial fact-finding.

The Pre-Sentence Report ("PSR") submitted to the Court
recommended that the base offense level for Counts 1 and 3 was
24. Because the handgun was used, during the commission of the
offense at issue, in connection with the commission of another
offense, the PSR recommended, and this Court ultimately applied,
a cross-reference to attempted first degree murder with a base
offense level of 33. The Court additionally increased the base
offense level by three levels pursuant to USSG § 1B1.1, after
determining that the victim sustained serious bodily injury.
The PSR and this Court also classified Rogers as an Armed Career
Criminal and career offender, and determined that he was subject

to an enhanced sentence under 18 U.S.C. § 924(e).[5]  Ultimately,

the Court determined that the proper offense level was a 36,

with a criminal history of Category V.  Thus, the applicable

Guidelines range was 292-365 months, and the Court sentenced

him, at the bottom of that range, to 292 months.

### a. Improper Application of Cross-Reference

Rogers argues that the cross-reference to attempted first

degree murder was inappropriate because the cross-referenced

offense was not subject to grouping under USSG § 1B1.1.  The

Government contends that this argument was raised, considered,

and rejected by the Fourth Circuit in Rogers's direct appeal.

Upon review of Rogers's appellate brief and the Fourth Circuit

opinion, however, it is clear that Rogers's appellate counsel

did not raise the propriety of applying a cross-reference.

Rather, the appeal focused on the propriety of the offense to

which the cross-reference was applied – specifically, whether

attempted first degree murder, or a lesser charge, was relevant

–, rather than the propriety of applying a cross-reference at

all.

In considering the issue here, however, the Court concludes

that its application of cross-reference was appropriate.  The

PSR recommended, and this Court agreed, that Rogers's conduct

---

[5] Although the Court determined that Rogers was an Armed Career
Criminal, it ultimately applied the non-Armed Career Criminal
Act criminal history category.

underlying the incident between him and Cook was relevant for sentencing purposes.  USSG § 2K2.1, which provides the offense level for a violation of 18 U.S.C. § 922(g)(1) (Count 1), provides in subsection (c) that, "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense," § 2X1.1 (which provides the offense level for attempts) should be applied "in respect to that other offense, if the resulting offense level is greater than that determined above."  USSG § 2K2.1(c)(1).  As the Fourth Circuit has noted, "[u]nder the scheme created by the [USSG], whether a particular cross-reference should be applied depends on whether the conduct to which the cross-reference refers is 'relevant conduct'" as defined by the Relevant Conduct Guidelines in USSG § 1B1.3.  United States v. Pauley, 289 F.3d 254, 258 (4th Cir. 2002), vacated in non-relevant part on reh'g, 304 F.3d 335 (4th Cir. 2002) (per curiam).

Relevant conduct includes:

[(a)(1)] all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; [and]

[(a)(2)] solely with respect to offenses of a character for which § 3D1.2(d) [the "Grouping Guideline"] would require grouping of multiple counts,

22

> all acts and omissions described in subdivisions
> (1)(A) and (1)(B) above that were part of the same
> course of conduct or common scheme or plan as the
> offense of conviction. . . .

USSG § 1B1.3.  As the Fourth Circuit has noted, "Subsection

(a)(1) . . . requires a closer connection between the acts and

omissions committed and the offense of conviction than does

Subsection (a)(2), which encompasses a broader group of acts.

As a counterbalance to this broader scope, however, Subsection

(a)(2) has a threshold limitation on its applicability, i.e., it

is applicable 'solely with respect to offenses of a character

for which [the Grouping Guideline] would require grouping of

multiple counts.'"  United States v. Horton, 693 F.3d 463, 476

(4th Cir. 2012) (quoting USSG § 1B1.3(a)(2)) (internal citations

omitted).

Rogers appears to argue that the relevant conduct cross-

reference in his case came in under subsection (a)(2), and

therefore, the Grouping Guidelines applied also.  Because the

Grouping Guidelines also apply, Rogers contends, and attempted

murder is not a groupable offense under § 3D1.2(d), the Court

erred in considering it as relevant conduct.  Because a circuit

split existed at the time regarding whether both the predicate

and relevant offenses must be subject to grouping in order to be

properly cross-referenced, Rogers argues that his trial and

appellate counsel were ineffective in failing to raise the
issue.

Rogers correctly notes that a circuit split exists
regarding whether the Grouping Guidelines require both the
original and the cross-referenced offense to be groupable
offenses in order to increase the base level on those grounds,
with the Fourth Circuit recently weighing in just last year.
See Horton, 693 F.3d at 478-79 (acknowledging the circuit split
and holding that both offenses must be subject to grouping for §
1B1.3(a)(2) to properly apply).  The Court determines, however,
that Rogers's relevant conduct was considered under Subsection
(a)(1), not (a)(2).  Although the PSR did not cite to a
particular subsection, it noted that the cross-referenced
conduct occurred "during the commission of" the predicate
offense.  This conclusion is supported by the facts of the case
– Rogers was convicted of possession of a handgun.  As Rogers
notes, the handgun was not found on his person or property.
Rather, the Government proved constructive possession by
introducing circumstantial evidence and eyewitness testimony
regarding his altercation with Cook.  Therefore, the jury
necessarily found, in convicting Rogers under § 922(g), that he
was in possession of the handgun at the time the altercation
with Cook occurred.  Therefore, Rogers committed the cross-
referenced conduct "during the commission of the offense of

conviction" as required for application of the cross-referenced conduct under § 1B1.3(a)(1). Therefore, the requirement found in (a)(2), that both offenses be subject to grouping, is not applicable.

### b. **Judicial Fact-Finding in Violation of Apprendi v. New Jersey**

Rogers also contends that the sentence imposed on Counts One and Three is unconstitutional because it violates the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004).[6] Specifically, Rogers argues that the Court's consideration of Rogers's conduct in applying the cross-referencing provisions of the Sentencing Guidelines was unconstitutional judicial fact-finding that increased his penalty beyond the statutory maximum.[7]

---

[6] Rogers presented this contention in a Motion to Amend his § 2255 motion, ECF No. 136, pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rogers asserts that the Court should consider his new contention under Rule 15 because it relates back to the common core of operative facts stated in the original claim. The Government having filed no opposition, the Court agrees that Rogers's Motion to Amend relates to the common core of operative facts stated in his original Motion to Vacate, and will therefore consider the arguments raised in Rogers's Motion to Amend.

[7] Rogers does not contend that the Court treated the guidelines as mandatory, rather than advisory. See generally United States v. Good, 170 F. App'x 820, 823 (4th Cir. 2006) ("Under [United States v.] Booker[, 543 U.S. 220 (2005),] there is no Sixth Amendment error when a defendant is sentenced under a non-mandatory guidelines scheme."). He also appears to argue that, by considering the cross-referenced conduct, the Court relieved the prosecution of its burden of proof regarding the charged

The Court disagrees.  The Court determined at sentencing that Rogers was an Armed Career Criminal and thus subject to an enhanced penalty under 18 U.S.C. § 924(e).  The enhanced penalty provision provides for a mandatory minimum of fifteen years imprisonment, and does not provide a statutory maximum.  18 U.S.C. § 924(e).  In Apprendi, the Supreme Court determined that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 489.  In making that determination, however, the Court noted that "nothing . . . suggests that it is impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing judgment within the range prescribed by statute."  Id. at 481 (emphasis in original).  Because the maximum sentence applicable to Rogers's conviction was life in prison, Rogers's ultimate sentence of 292 months was less than the statutory maximum and was therefore authorized by the jury's verdict.

---

conduct itself and his conviction must therefore be reversed. See ECF No. 136 at 3-4.  This contention is without merit.  The Court's consideration of Rogers's related conduct was limited to the sentencing phase of the trial only.  He was not charged with attempted murder, nor convicted of that offense by the jury. Therefore, to the extent that Rogers challenges the underlying validity of his conviction itself on these grounds, his argument is baseless.

## IV. Crack Cocaine Amendments

In addition to his § 2255 petition, Rogers also filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense.  ECF No. 137.  Rogers argues that he is entitled to retroactive application of the 2010 sentencing amendments to reduce his sentence under the Guidelines.  In Dorsey v. United States, 132 S. Ct. 2321 (2012), the Supreme Court determined that the sentencing amendments enacted pursuant to the Fair Sentencing Act of 2010, 124 Stat. 2372, were to be retroactively applied.  Specifically, the Court noted that the "new [mandatory] minimums apply to all of those sentenced after August 3, 2010," even if the underlying criminal conduct occurred before that date.[8]  132 S. Ct. at 2336.  Because Rogers's criminal conduct occurred in 2008, but he was not sentenced until December 2010, he contends that the Amendments may be retroactively applied to reduce his sentence.

Although Rogers's case was "in the pipeline" and thus may have been impacted by Dorsey, Rogers ultimately is not eligible for a sentence reduction.  The greater sentence imposed was premised not on Rogers's cocaine-related offense, but rather on the § 922(g) conviction and cross-referenced conduct.  Thus, any reduction in the sentence imposed for Rogers's possession with

---

[8] Rogers concedes, however, that he was "not sentenced under any particular mandatory minimum provision."  ECF No. 137 at 3 n.1.

intent to distribute conviction would have no effect on the

ultimate length of his sentence.[9]  Therefore, Rogers's motion to

modify his sentence will be denied.

### V. Conclusion

For the foregoing reasons, the Motion to Amend the § 2255

Motion will be granted; the Motion to Vacate Sentence will be

denied; and the Motion for Retroactive Application will be

denied.  A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: October 22, 2013

---

[9] Rogers's conviction on Count III of the superseding indictment
mandates a lengthier period of supervised release than either
Count I or Count IV.  The period of supervised release is
mandated by statute, however, and was not changed by the Fair
Sentencing Act of 2010.  See 21 U.S.C. § 841(b)(1)(C) (mandating
supervised release for a term of six years if the defendant is
convicted under that subsection and has a prior felony drug
conviction).